SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Seth M. Schwartz
Jason C. Vigna

*Attorneys for the Tremont Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

| | | |
|---|---|---|
| In re: | : | SIPA LIQUIDATION |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | : | No. 08-1789 (BRL) |
| Debtor. | : | (Substantively Consolidated) |

------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| BERNARD L. MADOFF, | : | |
| Debtor. | : | |

------------------------------------x

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | : | Adv. Pro. No. 10-05310 (BRL) |
| Plaintiff, | : | |
| v. | : | |
| TREMONT GROUP HOLDINGS, INC., et al., | : | |
| Defendants. | : | |

------------------------------------x

**TREMONT DEFENDANTS' RESPONSE IN SUPPORT OF TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

The Tremont Defendants[1] respectfully submit this response to the objections (the "Objections") made by various entities and individuals (the "Objectors") to the settlement agreement (the "Settlement") between and among the Trustee, Tremont and certain other defendants (the "Settling Defendants") in this adversary proceeding (the "Adversary Proceeding").

## INTRODUCTION

The Trustee commenced this Adversary Proceeding to avoid and recover approximately $2.1 billion in prepetition transfers allegedly made by BLMIS directly or indirectly to hedge funds (the "Funds") managed by Tremont. For more than two years prior to commencement of the Adversary Proceeding, the parties explored the possibility of settling the Trustee's anticipated avoidance claims. To that end, the Trustee conducted extensive informal discovery and counsel engaged in protracted arm's length negotiations. The resulting Settlement, which has been submitted to this Court for approval, will entitle the estate of BLMIS to receive a lump sum payment of $1.025 billion in cash.

The parties' Settlement agreement obligates the Settling Defendants, other than Rye Select Broad Market Insurance Portfolio LDC ("Insurance LDC"), to cause $1 billion to be paid to the Trustee (the "Tremont Settlement Payment").[2] Nonetheless, the Settling Defendants (other than Insurance LDC) contemplate that the Tremont Settlement Payment will be made solely by a number of Funds (other than Insurance LDC). In exchange, the Trustee has agreed to release the claims he has asserted against the Funds and the other Settling Defendants, to allow customer claims made by certain Funds in the BLMIS liquidation proceeding, and to increase the aggregate

---

[1] The Tremont Defendants (also referred to herein as "Tremont") are: Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited and Robert I. Schulman.

[2] The balance of $25 million is to be paid by Insurance LDC, a Fund that is in liquidation proceedings in the Cayman Islands.

1

amount of the allowed customer claims by $800,000,000 pursuant to Section 502(h) of the Bankruptcy Code (the "Additional Claim Amount").

The only Objections lodged against the Settlement have been filed by two groups of individuals and entities that are neither customers nor creditors of BLMIS. Rather, they are investors in the Funds and several Objectors also are plaintiffs in other litigation against Tremont for recovery of Madoff-related investment losses.

Because the Objectors are Fund investors who never had any direct relationship with BLMIS, they have no claim against the BLMIS estate. Nevertheless, both groups of Objectors – the "Carriers"[3] and the "Lakeview Investors"[4] – have filed objections to the Settlement, claiming in essence that the Settlement is unfair to certain of the Funds participating in the Settlement and, by extension, to the investors in those Funds. For example, the Objectors are direct or indirect investors in a Fund known as the "Prime Fund,"[5] a Fund that invested capital with BLMIS and is contributing to the Settlement. Objectors object to the terms of Prime's participation in the Settlement, contending that they are unfair to Prime and its investors because the Settlement agreement earmarks none of the Additional Claim Amount for the benefit of Prime, even though it intends to pay a portion of the Tremont Settlement Consideration.

---

[3] The Carriers are John Hancock Life Insurance Company (U.S.A.), Nationwide Life Insurance Company, New York Life Insurance & Annuity Corporation, Pacific Life Insurance Company, Pruco Life Insurance Company, Security Life of Denver Insurance Company and Sun Life Assurance Company of Canada (U.S.).

[4] The Lakeview Investors (also referred to herein as "Lakeview") are Phoenix Lake Partners, Inc., Lakeview Investment, LP, 2005 Tomchin Family Charitable Trust, Edward White (for himself and on behalf of White Trust dated May 3, 2002) and Rigdon O. Dees, III.

[5] The full name of the Prime Fund is Rye Select Broad Market Prime Fund, L.P. Certain Objectors invested directly in the Prime Fund by purchasing limited partnership interests in that partnership. Other Objectors made indirect investments in Prime by investing in a fund of funds managed by Tremont that allocated a portion of its capital to Prime, among other hedge funds.

The Lakeview Investors have raised additional objections, including with respect to certain of the releases included in the Settlement. In that connection, Lakeview objects to the Trustee's release of claims against certain Settling Defendants who purportedly are not contributing to the Settlement, namely, the Tremont Defendants that managed the Funds (the "Managers"), the defendant companies that are the Managers' parents (Mass Mutual and Oppenheimer), and the former Chairman of Tremont Group Holdings, Inc., Robert Schulman. According to Lakeview, the BLMIS estate is not receiving "adequate compensation" for the release of these defendants. Lakeview also contends that the Trustee effectively has released without compensation claims aggregating more than $215 million against certain subsequent transferees that are not parties to this Adversary Proceeding (the "Third Party Transferees"). Although Lakeview admits that the Settlement expressly preserves the Trustee's claims against the Third Party Transferees, it nevertheless contends that the Settlement actually precludes the Trustee from pursuing those claims under the "one-satisfaction" rule of Section 550(d) of the Bankruptcy Code.

None of the Objections has any merit. As a threshold matter, none of the Objectors has standing to object to the Settlement. While a number of the Funds are customers or creditors of the BLMIS, the Objectors are investors in the Funds and have no direct claims against the estate. They therefore lack standing to object and their Objections should be overruled on that basis alone. See, e.g., In re Refco Inc., 505 F.3d 109, 117-18 (2d Cir. 2007).

Even if the Objectors had standing, their Objections nevertheless would be meritless. As to the alleged unfairness of the Settlement to the Prime Fund, even if that contention had any bearing on the Trustee's motion for approval of the Settlement – which it does not – Objectors have not shown and cannot show any unfairness to Prime. Although Prime was a customer of BLMIS, it has no allowable customer claim against the estate because, under the "net

3

equity" method approved by this Court for determining customer claims, Prime is a net winner, having withdrawn more from BLMIS than it invested with the firm. See Secs. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff Inv. Secs. LLC), 424 B.R. 122, 132 (Bankr. S.D.N.Y. 2010) (Lifland, J.), aff'd, --- F.3d ----, 2011 WL 3568936 (2d Cir. Aug. 16, 2011). Because Prime has no customer claim, there is no Additional Claim Amount to allocate to Prime. Consequently, the absence of any allocation does not render the Settlement unfair or unreasonable.[6]

The Lakeview Investors fare no better with their attack on the releases granted to Settling Defendants who purportedly are not contributing to the Settlement. Where, as here, the total settlement consideration to be paid to the estate is fair and reasonable, "the court is not required to supervise how the defendants apportion liability for that compensation among themselves." Becker v. Warner Commc'ns, Inc. (In re Warner Commc'ns Secs. Litig.), 798 F.2d 35, 37 (2d Cir. 1986). There is also no merit to Lakeview's contention that the Settlement precludes the Trustee from seeking to recover more than $215 million in transfers purportedly made by one or more Funds to the Third Party Transferees (the "Subsequent Transfers"). To the extent the Trustee prevails in recoverying the Subsequent Transfers, he will not be able to obtain any "double recovery" as a result. Consequently, Section 550(d) of the Bankruptcy Code does not operate to bar the Trustee from seeking to recover the Subsequent Transfers.

---

[6] In the same vein, the Lakeview Investors further object that the Settlement allocates no portion of the Additional Claim Amount to another Settling Defendant, Rye Select Broad Market XL Fund, L.P. ("XL"). This objection also has no merit given that XL never was a customer of BLMIS and is not contributing to the Settlement.

4

## ARGUMENT

### I. THE OBJECTORS LACK STANDING TO OBJECT TO THE SETTLEMENT

1. Objectors lack standing to object to the settlement of an adversary proceeding unless they are "part[ies] in interest" within the meaning of Section 1109(b) of the Bankruptcy Code. 11 U.S.C § 1109(b). By definition, a "party in interest" is "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee."[7] Id. Where, as here, an objector is not a creditor of the debtor but, rather, an alleged creditor of the debtor's creditor, the objector is not a "party in interest" and therefore lacks standing to object to any settlement of an adversary proceeding. See In re Refco Inc., No. 05-60006, 2006 WL 3409088, at *6 (S.D.N.Y. Nov. 16, 2006) ("The Bankruptcy Court properly declined to consider Appellants' objections because creditors of a debtor, not a 'creditor of a debtor's creditor,' could properly raise objections to the Settlement." (citation omitted) (collecting cases)), aff'd, 505 F.3d 109 (2d Cir. 2007); accord In re Ionosphere Clubs, Inc., 101 B.R. 844, 850-51 (Bankr. S.D.N.Y. 1989) (Lifland, J.) (finding that non-creditors lacked standing to interject themselves into bankruptcy proceedings).

2. In their Objections to the Settlement, the Objectors concede, as they must, that they did not invest directly with BLMIS. (See Dkt. No. 20 ¶ 2; see also Dkt. No. 24, at 5-6.) Rather, they invested directly or indirectly with one or more of the Funds that, unlike the Objectors, *are* customers or creditors of BLMIS. (See id.) As investors in the Funds who themselves are *not* creditors or customers of BLMIS, the Objectors lack standing to object to the Settlement. See In re Refco, 505 F.3d 109 at 117-18.

---

[7] An "equity security holder" as used in this context is, indisputably, a debtor's equity security holder. See 11 U.S.C. § 101(17) ("The term 'equity security holder' means holder of an equity security of the debtor.").

5

3. In In re Refco, on substantially similar facts, the Second Circuit Court of Appeals affirmed a decision overruling settlement objections that were made *not* by creditors of the debtor but, rather, by investors in one of the parties to the settlement. In that case, after an investment company (Sphinx) agreed to settle an avoidance claim asserted against it by a debtor's creditors' committee, various investors in Sphinx (the "Investors") objected to the settlement, arguing that the settlement was unfair to them. The bankruptcy court overruled the objections, and the Second Circuit affirmed, agreeing with the bankruptcy court that the objectors lacked standing:

> The record establishes that Sphinx is a single legal entity . . . . By investing in Sphinx, Investors placed control of their funds entirely within the hands of the Sphinx directors (or managers acting on behalf of the directors). Only Sphinx, not individual Investors, or even Investors as a group, could assert a claim against the Refco estate, and only Sphinx was permitted to negotiate a settlement with the Committee. Investors maintain a financial "interest" in Sphinx, but they are not a "party in interest" within the meaning of the Bankruptcy Code. The party in interest in the bankruptcy sense, representing the Investors' financial interest, is Sphinx.

In re Refco, 507 F.3d at 117.

4. More recently, this Court reached the same conclusion in Picard v. Fairfield Sentry Ltd., No. 09-01239, Hearing Trans. (Dkt. No. 111) (Bankr. S.D.N.Y. June 7, 2011) (Lifland, J.). In that case, the Trustee asked this Court to approve his settlement with Fairfield Sentry, a hedge fund that directly invested its assets with BLMIS. In approving the settlement, this Court rejected on standing grounds objections asserted by investors in Fairfield Sentry. As explained by this Court in language equally applicable here:

> The objectors do not claim to be customers or creditors of the BLMIS estate but rather hold a de minimus stake in Fairfield Sentry, a non-debtor settling party. As the objectors are not directly and adversely affected pecuniarily because they do not hold a direct interest in the debtor, they lack standing to object to the trustee's motion [to approve the settlement with Fairfield Sentry] before this court.

Id., Hearing Trans. at 38.

6

5. Here too, the Objectors do not hold, and never held, a direct interest in the debtor, BLMIS. Rather, they are direct or indirect investors in Funds that were, in turn, customers and creditors of BLMIS. Objectors therefore lack standing to object to the Settlement the parties have submitted to this Court for approval.

## II. THE SETTLEMENT IS IN THE BEST INTERESTS OF THE BLMIS ESTATE

6. Even if the Objectors had standing to object – which they do not – their asserted Objections are meritless. When addressing a motion to approve a settlement, bankruptcy courts evaluate the fairness and reasonableness of the proposed settlement *to the debtor's estate*. See In re Refco, 505 F.3d at 119 ("[A] bankruptcy court's obligation is to determine whether a settlement is in the best interests of *the estate*." (emphasis in original)); Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994); Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). Here, the Objectors have proffered nothing to alter the conclusion that the Settlement is fair and reasonable to, and in the best interests of, the BLMIS estate.

7. Objectors have not even attempted to demonstrate that the $1.025 billion Settlement consideration to be paid to the BLMIS estate is below "'the lowest point in the range of reasonableness.'" Liu v. Silverman (In re Liu), 166 F.3d 1200 (table), 1998 WL 890176, at *1 (2d Cir. 1998) (citation omitted). The Settlement is the largest to date with any of the Madoff "feeder funds" and is eminently reasonable given that: (i) it will enable the estate to immediately recover $1.025 billion, thereby avoiding years of heavily contested litigation in which the prospects for recovery of even a small fraction of that amount are highly uncertain, at best; and (ii) the Settlement preserves the Trustee's ability to seek to recover additional transfers of approximately $1 billion that the Funds allegedly distributed to various non-settling subsequent transferees.

8.      In light of the fairness of the Settlement to the estate, the objection that the Settlement purportedly is unfair to Prime Fund is irrelevant. Objectors nowhere contend that Prime's contribution to the Settlement is inadequate. Rather, they complain that the Settlement does not provide for the allowance of any customer claim Prime may have. As noted above, however, Prime has no allowable customer claim against the estate under the "net equity" method for determining claims because Prime is a "net winner." But even if Prime had such a claim, disallowance of the claim would provide no evidence, much less establish, that the Settlement is unfair to the BLMIS estate. Consequently, the objection based on Prime's lack of participation in the Additional Claim Amount should be rejected.

## III.  THE SETTLEMENT'S RELEASES ARE REASONABLE

### A.  The "Noncontributing" Defendants

9.      The Lakeview Investors have objected to the scope of the releases provided under the Settlement, contending that it would result in the "uncompensated release of more than $180 million of avoidance transfer claims against Tremont Group, Tremont Partners, Tremont Bermuda, the Parent Defendants and Schulman." (Dkt. No. 24 at 4.) The Lakeview Investors apparently contend that this part of the release is "uncompensated" because the Tremont Defendants and their parent companies (Mass Mutual and Oppenheimer) purportedly are contributing no cash or other consideration to the Settlement.[8] Even if these defendants were making no such contribution, the objection still would lack merit. It is still well established that the "adequacy of the settlement does not depend upon the allocation [of the settlement] amount among the Defendants." In re NASDAQ Market-Makers Antitrust Litig., 184 F.R.D. 506, 512 (S.D.N.Y. 1999). Where, as here, the total settlement consideration is fair and reasonable, "the

---

[8] (See Dkt. No. 24 at 4 ("In the absence of any material monetary contribution, none of these defendants should benefit from the release provided by the Proposed Settlement.").)

court is not required to supervise how the defendants apportion liability for that compensation among themselves." In re Warner, 798 F.2d at 37. Consequently, "'the release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise.'" Duban v. Diversified Mortg. Investors, 87 F.R.D. 33, 40 (S.D.N.Y. 1980) (citation omitted).

10. This objection also is fatally flawed because, contrary to Lakeview's baseless assertion, the Managers made and will continue to make significant contributions to the Settlement. For example, as manager of the Funds, the Managers have investment management agreements with each Fund entitling the Managers to indemnification for all expenses it incurs in connection with, among other things, defending the avalanche of litigation arising out of Madoff's Ponzi scheme. The expenses associated with the litigation have been and will continue to be significant. Nevertheless, to facilitate the Settlement and to maximize the amounts available for payment to the estate from the Funds that were transferees of BLMIS, the Managers have agreed to waive their rights to seek indemnification from the Funds. The Managers also have agreed to pay all of the ordinary and necessary operating expenses of the Funds contributing to the Settlement if the Settlement becomes effective. (See Dkt. No. 17-1 ¶ 7.) The collective effect of these agreements is to make available to the BLMIS estate millions of dollars that otherwise would go to the Managers to cover, among other things, the fees of various third party service providers, including lawyers, auditors and administrators.

11. The other Settling Defendants also are providing consideration for the Trustee's release of his claims against them. As parties to the Settlement agreement, they may be required to fund the Tremont Settlement Payment to the extent the Funds do not do so. But even absent that obligation, as shown above, as a matter of law, it would not alter the conclusion that the total Settlement consideration to be paid to the BLMIS estate is fair and reasonable. In fact, this objection rings particularly hollow given that Objectors have made no showing that the

Trustee has any claim of value against any of the other, non-Fund defendants, or that the Trustee's release of these claims was anything other than an appropriate exercise of business judgment.

### B. The Third Party Transferees

12. There is no merit to Lakeview's objection that Section 550(d) of the Bankruptcy Code bars the Trustee from seeking to recover Subsequent Transfers from Third Party Transferees. Section 550(d) prohibits the Trustee from "obtain[ing] twice the full value of a fraudulent transfer by recovering that value from both the initial transferee and a subsequent transferee." Dzikowski v. N. Trust Bank of Fla. (In re Prudential of Fla. Leasing, Inc.), 478 F.3d 1291, 1297 (11th Cir. 2007). Here, however, the statute is inapplicable because the Settlement does not operate to permit the Trustee to recover the same value twice from both the Settling Defendants and the non-settling Third Party Transferees.

13. In the Complaint in the Adversary Proceeding, the Trustee alleges that the Funds received voidable transfers from BLMIS totaling $2.1 billion. Of that amount, the Settlement provides for payment of $1.025 billion to the estate, and expressly reserves the Trustee's right to seek to recover the balance from Third Party Transferees. (See Dkt. No. 17-1, ¶ 4.) Even if the Trustee ultimately succeeds in recovering 100 percent of that balance, his aggregate recovery cannot and will not exceed $2.1 billion, the total amount of voidable transfers alleged in the Complaint. Because there is no prospect of double recovery, neither the Settlement nor Section 550(d) creates any impediment to the Trustee's assertion of avoidance claims against Third Party Transferees. See, e.g., In re Prudential, 478 F.3d at 1301-02.

## CONCLUSION

For the foregoing reasons, the Objections should be overruled and the Settlement should be approved.

Dated: New York, New York
September 19, 2011

Respectfully submitted,

/s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for the Tremont Defendants